UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-258

JAMES OPAUSKI,                                                                                                    PLAINTIFF

v.                                              **OPINION & ORDER**

PIKEVILLE COAL COMPANY,                                                                            DEFENDANT

\* \* \* \* \* \* \* \* \* \*

     This action is before the court on Defendant, Pikeville Coal Company's ("Pikeville Coal"), Motion for Summary Judgment (Rec. 21) and Plaintiff, James Opauski's Motion for Summary Judgment (Rec. 24). After reviewing the record, the court find that no issues of material fact are left to be determined. The court thus GRANTS summary judgment for Pikeville Coal and DENIES summary judgment for Opauski.

     **I. BACKGROUND**

     **A. Mine Closure**

     James Opauski was an employee of the Chisholm Coal Company ("Chisholm Coal") and its predecessor Pikeville Coal, at the Chisholm Mine in Phelps, Kentucky for a period of twenty-two years beginning in 1978. Opauski's employment with Chisholm Coal ended in 2002 and the current dispute is over what severance pay, if any, he is owed under company policies in place at the time of his termination.

     During the court of Opauski's employment, the Chisholm Coal Mine's management changed a number of times as did its severance pay policy. Prior to the expiration of its

-1-

managing agent contract in April, 1993, Pickands Mather & Co, operated the Chisholm Mine and gave severance pay to employees upon their termination.[1] In September, 1995, Opauski and the other Chisholm Mine employees were given a memorandum that stated that the company would no longer pay any severance to an employee that was terminated in the future.[2] Opauski admitted that he received the memorandum and acknowledged understanding its contents. From this point forward, Chisholm claims that no employee received any severance pay upon termination and that whatever policy was in place by its predecessor was ended.

In February of 2002, the employees of the Chisholm Mine were given notice by Chisholm Coal that the mine would close on April 12, 2002, due to the exhaustion of commercially recoverable coal reserves. Prior to the closing, Chisholm instituted a "Stay Bonus" program in order to provide an incentive to certain of its employees to remain with Chisholm during the final stages of the mine closing. The "Stay Bonus" provided for a "Separation Payment" calculated based upon an employee's weekly pay and total years of service. This payment was provided in lieu of any other compensation, besides except for entitlements such as vaction time.

Opauski qualified for and received the Stay Bonus and remained with the mine until its closure. He was also one of the employees given the option of remaining with Chisholm Coal for a short time after the mine closure, although the term of his employment was not guaranteed by the company. Opauski decided against remaining with the company and instead utilized

---

[1] There is a factual dispute concerning whether there was a policy in place that led to severance pay being given after all terminations or whether pay was given selectively. For purposes of this summary judgment motion, we will assume the facts in the light most favorable to Opauski and proceed as if a policy for pay was in place.

[2] This memorandum came at the end of another lawsuit in which terminated employees sued for severance pay, claiming that a past policy had been in place for such payments. That claim was settled and the memorandum in question was issued immediately after to the remaining employees.

federal funding to attend college. His employment with Chisholm Coal thus was terminated.

During his tenure at the Chisholm Mine, Opauski participated in a number of employee compensation plans that are at issue in this case. One was the Pension Plan for Salaried Employees of Chisholm Coal Company. At the time of the mine closure, the Pension Plan was amended to provide an option for payments and early retirements to any participant who was an Employee as defined by the Plan (of which Opauski was one) and met certain age and service requirements. Any of these employees who elected to retire during May, 2002 were eligible for a more quickly accrued pension, deemed the "Window of Opportunity," and a number of Chisholm employees accepted this offer. Opauski was not eligible for the newly accelerated pension due to his age, and thus was not given any payment under the amendment.

## II. ANALYSIS

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is

-3-

a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.*, 822 F.2d at 1435-36. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Through the course of this litigation, Opauski has taken a number of different positions, making various legal claims, some of which have even been contradictory. However at this point, his primary argument seems to be that Chisholm Coal has not followed the necessary procedures in terminating its "severance pay policy."

29 U.S.C. §1002 (2)(b) allows the Secretary of Labor to categorize employee severance pay arrangements as "welfare plans," rather than "employee pension benefit plans" in order to exempt such arrangements from the ERISA requirements created by the statute. According to the 6th Circuit, this provision leads to a conclusion that "[i]t is now well-established that severance benefit plans . . . are welfare benefit plans. *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir. 1990). Opauski argues that there is no requirement under ERISA that such a welfare benefit plan be in writing or be a formal system. Rather, simply continuing a practice of paying severance benefits can lead to the formation of a "welfare benefit plan," thus initiating certain ERISA requirements. Chisholm Coal does not specifically contest this argument and accepts that the creation of a welfare benefit plan may exist through more informal procedures. *See Deibler v. United Food & Commercial Workers Local Union 21*, (2nd Cir. 1992).[3]

Assuming that a welfare benefit plan existed for the employees of Chisholm Mine, Opauski argues that the decision by Chisholm Coal in 1995 to amend the plan and terminate severance benefits violated Chisholm Coal's fiduciary duty to its employees and the ERISA

---

[3]In addition, for purposes of this motion, Chisholm Coal assumes that a severance pay policy was in effect prior to 1995. The court will do so as well.

notice provisions.  As support for the first of these contentions, Opauski cites *Calhoun v. Falstaff Brewing Corp.*, 478 F. Supp. 357 (E.D. Mo. 1979), which held that the company's amendment of a severance plan before the termination of a number of employees violated the fiduciary duties imposed upon employers by ERISA.  *Id.* at 361.  Important to the court's decision in *Calhoun* was the fact that the employer planned to terminate the employment of its employees and amended the severance policy just before termination for the sole purpose of being relieved from its severance obligations.  The Court thus focused on the proximity of events in finding a violation of the company's fiduciary duties.  *Id.*

Aside from the factual distinctions between the *Calhoun* case and this one[4], Opauski's argument fails because *Calhoun* is not the law of the Sixth Circuit.  The Sixth Circuit has held that an employer does not act as a fiduciary and thus has none of the required duties when deciding to amend or terminate a severance pay policy.  *Adams v. Avendale Industries, Inc.*, 905 F.2d at 947.  Because severance policies are welfare benefit plans, fiduciary responsibilities exist under the ERISA framework, but are limited in scope.  Requiring companies to act in the best interests of their employees in making determinations as to welfare benefits such as severance pay would essentially give employees a vested interest in those benefits, a result specifically rejected by the ERISA statutes.  Thus Chisholm Coal's decision, six years prior to the ending of Opauski's employment, cannot be said to violate any fiduciary duty it might have had to him.

As to the question of notice, Opauski again misinterprets the applicable law.  He claims that 29 U.S.C. § 1504(h) requires employers to provide advance written notice to employees

---

[4]Because proximity of time was so important to the *Calhoun* decision, it is important to remember that the decision to amend the policy in this case took place over six years prior to the end of Opauski's employment.

prior to the date of plan amendments, notice that he claims was never given.  Regardless of whether such notice was given, and Chisholm Coal claims that all employees were notified, Opauski is incorrect in assuming that it is required.  Employee welfare benefit plans are explicitly exempted from the participation and vesting sections of ERISA.  *See Adams*, 905 F.2d at 947, 29 U.S.C. §§ 1051-1061.  Because the notice provision falls within the participation and vesting sections of the statute, it can only be deemed to apply to employee pension benefit plans, not welfare benefit plans.  Thus Chisholm Coal had no obligation to follow the requirements of 29 U.S.C. § 1504(h), making it inapplicable to the case.

      Finally, at various points in this litigation, Opauski has argued that the "Stay Bonus" plan and the "Window of Opportunity" plan were severance pay plans that existed after the termination of the formal policy in 1995.  Chisholm Coal has provided evidence to the court that these policies had nothing to do with severance pay or a more formal policy that applied to all employees, but rather were singular actions by the company to address its needs at a particular time.  Thus all of these offers were for limited time periods and could be accepted or rejected by eligible employees.  Opauski has provided no evidence beyond his own assertion that these two programs constituted severance pay policies and in his Motion for Summary Judgment, he has seemingly dropped the argument.  Thus because no evidence exists that the "Stay Bonus" plan or "Window of Opportunity" plan reinstated a severance pay policy, no issue of fact exists on which a dispute could still arise.

      Because no genuine issues of material fact exist,

1.    The court GRANTS Chisholm Coal's Motion for Summary Judgment (Rec. 21); and

2. The court DENIES Opauski's Motion for Summary Judgment. (Rec. 24).

3. The case is thus closed and the Clerk should strike it from the record.

This the 25th day of January, 2006.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge